NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :

| | |
|---|---|
| DIANE COLES, as Executrix of the Estate of Stacy Coles, as Trustee of the Special Needs Trust of Stacy Coles, and Individually, | : : : : : |
| Plaintiff, | : : |
| v. | : : |
| NEW JERSEY DEPARTMENT OF HUMAN SERVICES; DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES; JENNIFER VELEZ, individually and as Commissioner of the New Jersey Department of Human Services; VALERIE HARR, individually and as Director of the New Jersey Department of Human Services, Division of Medical Assistance and Health Services, | : : : : : : : : : : : : |
| Defendants. | : : : |

Civil Action No. 13-3987 (FLW)(LHG)

**OPINION**

_____ :

**<u>WOLFSON, United States District Judge</u>:**

       Before the Court is the Motion of the New Jersey Department of Human Services ("DHS"); the New Jersey Department of Human Services, Division of Medical Assistance and Health Services ("DMAHS"); Jennifer Velez, individually, and as Commissioner of the New Jersey Department of Human Services ("Commissioner Velez"); and Valerie Harr, individually, and as Director of the New Jersey Department of Human Services, Division of Medical Assistance and Health Services ("Director Harr"), (collectively "Defendants"), to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Complaint of Diane Coles as the Executrix

of the Estate of Stacy Coles, as Trustee of the Special Needs Trust of Stacy Coles, and individually ("Plaintiff"). In her Complaint, Plaintiff alleges violations of federal law and the United States Constitution and seeks to enjoin the Defendants from collecting funds from the Special Needs Trust for the Benefit of Stacy Coles (the "SNT") to reimburse the State of New Jersey for medical costs incurred by the state Medicaid Program on Miss Coles' behalf during her life.

For the reasons that follow, this Court finds (i) that Plaintiff's claims against DHS and DMAHS are barred by Eleventh Amendment sovereign immunity; (ii) that Plaintiff's claims against Defendants Velez and Harr are not barred by sovereign immunity under the well-established doctrine of *Ex parte Young*; and (iii) that Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983, pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, the Complaint is dismissed without prejudice. Because the underlying circumstances of this case alleged by Plaintiff may be the proper subject for declaratory relief, Plaintiff is also granted leave to file an Amended Complaint within the time allowed in the Order to follow.

## I. BACKGROUND

Stacy Coles ("Miss Coles"), now deceased, was severely disabled as a result of a diving accident, which occurred in Belmar, New Jersey, on August 10, 2002. Miss Coles and her mother, Diane Coles, the Plaintiff in this case, filed a complaint in New Jersey Superior Court against the Borough of Belmar and the Borough's Harbor Commission seeking recovery for Miss Coles' injuries and for the costs of her future long-term care. On October 25, 2005, the lawsuit was settled for $3.3 million. Prior to the settlement of her lawsuit, Miss Coles had

qualified under New Jersey law for participation in the state's Medicaid Program, which is administered by DMAHS, a division of DHS. *See* N.J. Stat. § 30:4D-3(i)(8)(c); §§ 30:4D-4, 4D-5. From the time of her accident in August 2002, to the settlement of her lawsuit in October of 2005, DMAHS paid $620,765.38 for medical services provided to Miss Coles. As part of the settlement, the Coles' attorney was awarded $880,923. The total other costs of the lawsuit amounted to $23,110.

DMAHS was statutorily entitled to be reimbursed from the settlement fund for the medical care it had provided Miss Coles. Specifically, N.J. Stat. § 30:4D-7.1(b) provides:

> (b) When a recipient, his guardian, executor, administrator or other appropriate representative brings an action for damages against a third party, written notice shall be given to the Director of the Division of Medical Assistance and Health Services. In addition, every recipient or his legal representative shall promptly notify the division of any recovery from a third party and *shall immediately reimburse the division in full from the proceeds of any settlement, judgment, or other recovery in any action or claim initiated against any such third party subject to a pro rata deduction for counsel fees, costs, or other expenses incurred by the recipient or the recipient's attorney*; provided, however, that the director may make application to a court of competent jurisdiction for an award of counsel fees and costs incurred in the pursuit of a claim under this subsection.

*Ibid.* (emphasis added). Accordingly, after having been made aware of the settlement, DMAHS informed Plaintiff that it had paid $620,765.38 for medical care for Miss Coles and requested reimbursement. Pursuant to § 30:4D-7.1(b), DMAHS's requested reimbursement was reduced by $168,765.38 to account for its *pro rata* share of the attorney's fees and litigation costs incurred in securing the settlement. After this reduction, the State of New Jersey, through DMAHS, recovered $452,000 from the settlement fund. Miss Coles took the remainder of the settlement fund, which, by the Court's calculation from the facts alleged in the Complaint and Defendants' estimation in briefing, significantly exceeded one million dollars. [Complaint, ¶¶ 8-11; Defendants' Brief in Support, p. 8].

On December 1, 2005, the remainder of the settlement was used to fund a Special Needs Trust, established and administered by Plaintiff for the benefit of Miss Coles. Under most circumstances, assets held in trust for the benefit of a Medicaid applicant are counted toward their available assets in determining their eligibility for benefits. *See* 42 U.S.C. §§ 1396p(d)(1)-(3). Special Needs Trusts are an exception to this rule:

> **(4)** This subsection [providing for the consideration of trust assets in Medicaid eligibility determinations] shall not apply to any of the following trusts:
>
> **(A)** A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

42 U.S.C. § 1396p(d)(4)(A). While it varies based upon family circumstances, an individual is normally only eligible for Medicaid assistance in New Jersey if his or her assets are less than some figure between $2000 and $4000. *See* N.J. Stat. § 30:4D-3(i)(8)(c); 42 U.S.C. § 1382(a). Thus, Miss Coles' settlement remainder, totaling in excess of one million dollars, would have disqualified her from continuing to receive Medicaid assistance. By establishing the SNT for her daughter, Plaintiff preserved her daughter's continued eligibility for Medicaid benefits.

The establishment of the SNT, however, also resulted in other changes to Plaintiff's, Miss Coles', and DMAHS's legal entitlements. 42 U.S.C. § 1396p(d)(4)(A), which creates the exemption for SNT assets in Medicaid eligibility determinations, also requires that all SNT instruments name the State as the first remainder beneficiary to any funds remaining in the trust at the death of the trust beneficiary. In other words, assets held in the SNT can receive preferential treatment in Medicaid eligibility determinations only "if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan." 42 U.S.C. §

1396p(d)(4)(A). The SNT established on behalf of Miss Coles was drafted in conformance with New Jersey regulations and contained this reimbursement requirement.[1]

Stacy Coles died on January 1, 2013. In the period from the finalization of the settlement in October of 2005 to Miss Coles' death in January of 2013, DMAHS paid an additional $7,105.44 for her medical care. Exercising its rights as the first remainder beneficiary under the terms of the SNT, DMAHS sent a letter to Plaintiff's counsel demanding $175,870.82 in reimbursement. This amount represented the sum of all expenditures from prior to October 2005 that were not reimbursed as part of the settlement due to the *pro rata* reduction of DMAHS's recovery to account for its share of attorney's fees and costs ($168,765.38), along with the $7,105.44 in expenses incurred in the period after the settlement and prior to Miss Coles' death. Plaintiff responded to the State's letter by offering to pay $7,105.44 in full satisfaction of the remaining amount due, asserting that the larger portion of the debt — that part incurred prior to the October 2005 settlement — was extinguished by the payment of $452,000 made at the time of the settlement ($620,765.38 less $168,765.38, pursuant to N.J. Stat. § 30:4D-7.1(b)). DMAHS disputed Plaintiff's interpretation of N.J. Stat. § 30:4D-7.1(b) and asserted its entitlement to reimbursement from the SNT in the amount of $175,870.82, "the total value of all medical assistance paid on behalf of" Miss Coles. N.J. Admin. Code § 10:71-4.11(g)(1)(xii).

---

[1] While the language of the New Jersey regulations does not exactly mirror that of the federal Medicaid statute, it is similar in all relevant aspects:

> xii. The trust shall specifically state that, upon the death of the primary beneficiary, the State will be notified, and shall be paid all amounts remaining in the trust up to the total value of all medical assistance paid on behalf of the beneficiary. The trust shall comply fully with this obligation under the statute to first repay the State, without requiring the State to take any action except to establish the amount to be repaid. Repayment shall be made to the Treasurer, State of New Jersey, and shall be sent to the Division of Medical Assistance and Health Services, to the attention of the Bureau of Administrative Control, PO Box 712, Trenton, New Jersey 08625–0712, or to any successor agency.

N.J. Admin. Code § 10:71-4.11(g)(1)(xii).

## II. PROCEDURAL HISTORY

On June 27, 2013, Plaintiff filed the Complaint in this case, naming all Defendants, and seeking injunctive relief under 24 U.S.C. § 1983 for alleged violations of 24 U.S.C. § 1396p(d)(4)(C) and deprivation of the right not to be deprived of property without due process of law under the United States Constitution. On October 9, 2013, Defendants moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), on sovereign immunity grounds and, pursuant to Rule 12(b)(6), for failure to state a claim. That motion is now before the Court.

## III. STANDARD OF REVIEW

### A. 12(b)(1)

A motion to dismiss based on state sovereign immunity is appropriate under both Rule 12(b)(1) and Rule 12(b)(6). *See Carter v. City of Philadelphia,* 181 F.3d 339, 343 (3d Cir. 1999) (considering immunity under 12(b)(6)); *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (considering immunity under 12(b)(1)). Defendants bring their motion under Rule 12(b)(1). In this case, however, the Court must apply substantially the same standard under either section. Where, as here, a motion under Rule 12(b)(1) is filed prior to an answer, it is considered a "facial" challenge to the court's subject matter jurisdiction. *Cardio–Med. Assocs. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983). In reviewing a facial challenge, the Court must dismiss a plaintiff's claims if "the allegations on the face of the complaint, taken as true, [do not] allege facts sufficient to invoke [its] jurisdiction." *Licata v. U.S. Postal Serv.,* 33 F.3d 259, 260 (3d Cir. 1994). As discussed in greater depth below, in reviewing a motion under

Rule 12(b)(6), the Court must dismiss Plaintiff's claims if the "complaint [does not] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Thus, under either standard, the Court must look to the face of the Complaint and take its allegations as true.

In an ordinary Rule 12(b)(1) motion, the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991), *cert. denied,* 501 U.S. 1222 (1991). Sovereign immunity, on the other hand, is an affirmative defense, and the burden of demonstrating immunity lies with the party asserting it. *See Carter v. City of Philadelphia,* 181 F.3d 339, 347 (3d Cir. 1999) (citing *Christy v. Pennsylvania Turnpike Commission,* 54 F.3d 1140, 1144 (3d Cir. 1995)).


B. 12(b)(6)

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher,* 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149–50 n. 3 (1984) (quotation and citation omitted). A district court, in weighing a motion to dismiss,

asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly,* 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhoades,* 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (*"Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly."*).

Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Ibid.* A complaint must do more than allege the plaintiff's entitlement to relief. *Ibid.; see also Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). Finally, a court in reviewing a Rule 12(b)(6)

motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999).

## IV. JURISDICTION

A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; *see also* 28 U.S.C. § 1331. In the Complaint, Plaintiff alleges violation of a federal law, 24 U.S.C. § 1396p(d)(4)(C), and deprivation of a federal, constitutional right under 24 U.S.C. § 1983. The Court, accordingly, has original jurisdiction over this matter as arising under the Constitution and laws of the United States.

## V. ELEVENTH AMENDMENT IMMUNITY

Defendants claim that a suit against the New Jersey Department of Human Services ("DHS"); the Division of Medical Assistance and Health Services ("DMAHS"); Jenifer Velez, Commissioner of DHS; and Valerie Harr, Director of DMAHS is barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. By its language, the Eleventh Amended does not explicitly apply to cases that do not involve "Citizens of another State" or "Citizens or Subjects of any Foreign State," but the Supreme Court has long held that it provides the states "with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 167 (3d Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890)). In this case, therefore, it is clear that Plaintiff, as a citizen of the State of New Jersey, could not have brought her § 1983 action against the State of New Jersey itself. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Quern v. Jordan*, 440 U.S. 332, 341 (1979).

A state agency is entitled to the same sovereign immunity protection as the state itself when it is determined to be an "alter ego" or "arm" of the state. *Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995). The Third Circuit's "oft-reiterated test" for whether an agency is entitled to share in the state's immunity "entails three distinct inquiries: (1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state (this includes three considerations: whether the payment will come from the state's treasury, whether the agency has sufficient funds to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts); (2) the status of the agency under state law (this includes four considerations: how state law treats the agency generally, whether the agency is separately incorporated, whether the agency can sue and be sued in its own right, and whether it is immune from state taxation); and (3) what degree of autonomy the agency enjoys." *Id.* at 1144-45. "[A]lthough no single factor is dispositive of the Eleventh Amendment inquiry, the "most important" factor is whether a judgment against the entity in question, in this case [DHS and DMAHS], would be paid out of the state treasury." *Id.* at 1145 (citing *Fitchik v.*

*New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir. 1989). It is undisputed that DHS is a fully integrated and state controlled agency and that any judgment against it or its subdivision DMAHS would be paid from the New Jersey State Treasury. Accordingly, all claims in the Complaint, as raised against Defendants DHS and DMAHS are dismissed as barred by New Jersey's sovereign immunity.

Actions against state officers, however, are subject to a different standard. Usually, absent specific abrogation of the state's immunity by Congress or consent by a state, suits for money damages against a state or state officials in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (concluding that Eleventh Amendment barred official capacity action for damages in § 1983 suit); *Edelman v. Jordan,* 415 U.S. 651 (1974) (holding that suit against state official for retroactive monetary relief, which requires payment of funds from state treasury is barred by Eleventh Amendment); *accord Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 694 (3d Cir. 1996). The Amendment, however, does not bar Plaintiffs from suing state officials for violations of federal law where future injunctive relief is sought. *See Ex parte Young,* 209 U.S. 123 (1908) (holding that Eleventh Amendment does not prohibit suit to enjoin state Attorney General from enforcing state statute that allegedly violated Fourteenth Amendment); *see also Edelman,* 415 U.S. 651 (same); *Koslow,* 302 F.3d at 167-68 (same).

In *Ex parte Young* and its progeny, the Supreme Court has permitted suits against state officials that seek purely prospective relief to end an ongoing violation of federal law. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002). The theory behind *Ex Parte Young* is that a state officer lacks the authority to enforce an unconstitutional state enactment, and thus the officer is "stripped of his official or representative character and becomes subject to

the consequences of his individual conduct." *Id.* (quoting *MCI Telecomm. Corp v. Bell Atl. Pa.,* 271 F.3d 491, 506 (3d Cir. 2001)) (internal quotation marks omitted). Plaintiffs can therefore bring suit against state officers, but their remedies are limited to those that are "designed to end a continuing violation of federal law." *Green v. Mansour,* 474 U.S. 64, 68 (1985). As the Supreme Court explained in *Edelman,* the Eleventh Amendment may still bar equitable relief sought using the legal fiction of *Ex parte Young* if, in practice, the relief sought is retroactive or a money judgment payable out of the state treasury. *Edelman,* 415 U.S. at 666–67; *accord Pennhurst,* 465 U.S. at 103 (holding that plaintiffs may not be awarded damages or other forms of retroactive relief in an action against state officials under *Ex parte Young*); *Blanciak,* 77 F.3d at 697–98 ("relief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment").

In *Edelman,* the district court had ordered the state to retroactively release and remit state benefits wrongfully withheld from plaintiffs. The effect of this "injunction," was to require the state to pay out benefits it otherwise would not have. The Supreme Court reversed the district court's decision, concluding that such an order was "in practical effect indistinguishable in many aspects from an award of damages against the State." *Id.* at 668. In so holding, the Court distinguished *Ex parte Young* and similar cases in which injunctive or declaratory relief was not barred because such relief was likely to have only an "ancillary effect on the state treasury." *Ibid.* In *Ex parte Young,* "the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions." *Id.* at 667. In considering the holding in *Young*, the *Edelman* court reasoned that while enjoining the state from collecting penalties would have a monetary impact on the state's treasury, this effect was only "ancillary" because "the fiscal consequences to state treasuries in

these cases were the necessary result of compliance with decrees which by their terms were prospective in nature." *Id.* at 667-68.

When evaluating whether a complaint makes a claim for prospective, injunctive relief, or retrospective, compensatory relief, the label given to the requested relief is "of no importance." *Blanciak,* 77 F.3d at 698. Instead, the Third Circuit instructs that we must "look to the substance rather than the form of the relief requested" to determine if it is barred by the Eleventh Amendment. *Ibid.* When an action "is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants." *Edelman,* 415 U.S. at 663 (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)) (internal quotation marks omitted).

Here, granting Plaintiff's requested relief would enjoin the State from collecting funds from the SNT to which the State makes a claim as a first remainder beneficiary. This would, as in *Ex parte Young*, have an effect upon the State treasury by preventing the State from collecting money it believes that it is owed. Such an effect would, however, as in *Ex parte Young* itself, have only an ancillary effect upon the treasury, and is, therefore, not barred by the Eleventh Amendment. In this case, as in *Young*, the state allegedly has a claim to money, based upon a statute, and the relief requested would extinguish that claim. It would not, however, as in *Edelman*, require a new disbursement of money from the treasury in recompense for money previously withheld. Stated simply, in this case it is undisputed that the money sought by the State of New Jersey has already been appropriated for, and spent on, medical services as part of the State's Medicaid Program. The injunctive relief requested by Plaintiff would not require any additional appropriation or expenditure, nor would it require the payment by the State to Plaintiff

of any money in compensation for past harm. Rather, Plaintiff requests relief that is at least facially prospective in nature, namely she asks that this Court enjoin Commissioner Velez and Director Harr from enforcing 42 U.S.C. § 1396p(d)(4)(A) in a manner that Plaintiff asserts is unlawful and unconstitutional. Therefore, Defendants' motion to dismiss under Rule 12(b)(1) is denied to the extent that Plaintiff seeks prospective injunctive relief and attorneys' fees[2] against Commissioner Velez and Director Harr.[3] *Cf. Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318-20 (3d Cir. 2013) (finding plaintiffs' claims for payments allegedly unlawfully withheld by the state five years prior to the suit barred by sovereign immunity, because although phrased as an action to enjoin state officers, the remedy sought was actually in the form of damages).

## VI. FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Defendants also move to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In Count I of the Complaint, Plaintiff alleges violation of the "anti-Medicaid

---

[2] *See Missouri,* 491 U.S. at 279 ("it must be accepted as settled that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment"). *See* discussion in *Johnson v. Guhl*, 91 F. Supp. 2d 754, 771-72 (D.N.J. 2000).

[3] Relying on *Hafer v. Melo*, 502 U.S. 21, 27 (1991), Defendants argue that Commissioner Velez and Director Harr, as public officials sued in their official capacities, "assume the identity" of their employer, in this case the state. [Motion Brief, p. 19]. Defendants conclude that therefore any action for monetary relief against Commissioner Velez and Director Harr is in fact an action against the State subject to sovereign immunity. Defendants are correct to the extent the Plaintiff is seeking money damages, but do not address the main thrust of Plaintiff's request for injunctive relief to prevent the state from collecting from the special needs trust. Rather than *Hafer*, the more applicable rule for this case is that enunciated in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n. 10 (1989), where the Supreme Court stated that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985); *Ex parte Young,* 209 U.S. at 159–160).

lien Act," citing 42 U.S.C. § 1396p(d)(4)(C). This section does not specifically provide a private right of action, so Plaintiff's suit is presumed to be brought under 42 U.S.C. § 1983. Section 1396p(d)(4)(C) provides:

> **(4)** This subsection shall not apply to any of the following trusts:
> **(C)** A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:
> > **(i)** The trust is established and managed by a nonprofit association.
> > **(ii)** A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.
> > **(iii)** Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.
> > **(iv)** To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.

By its express terms, this section addresses the exemption from consideration for continued eligibility for Medicaid benefits of assets held in a "pooled trust" arrangement. The first requirement for a trust to qualify under this section is that it be established and managed by a nonprofit association. The Complaint contains no allegation that the Stacy Coles SNT in question was established or managed by a nonprofit entity, and to the contrary alleges that the trust was created according to the mutually exclusive provision of § 1396p(d)(4)(A). The only potentially relevant section of the statute actually invoked by Plaintiff in the Complaint appears to be § 1396p(d)(4)(C)(iv) which discusses the ability of a pooled trust to retain funds rather than repay them to the state, but, again, it is clear from the face of the statute that this provision applies only to trusts administered by nonprofit or charitable associations. Accordingly, Count I of the

Complaint fails to state a claim under § 1396p(d)(4)(C). To the extent that this claim was meant to be brought under § 1396p(d)(4)(A), it is addressed in the discussion of Count II, *infra*.[4]

Count II of the Complaint makes a claim under 24 U.S.C. § 1983 for "deprivation of rights" without due process of law. Section 1983 of Title 42 of the United States Code provides a cause of action for violation of constitutional rights by a person acting under color of state law. To recover under § 1983, Plaintiff must show two elements: (1) a person deprived her or caused her to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988).

Plaintiff asserts her right to the remaining money in the Stacy Coles SNT pursuant to N.J. Stat. § 30:4D-7.1, a state statute. [Complaint, Count II, ¶ 3]. Defendants assert their right to certain monies held in the SNT pursuant to 42 U.S.C. § 1396p(d)(4)(A), which, as discussed *supra*, is a federal statute. Plaintiff does not challenge that the State is indeed the first remainder beneficiary on the Stacy Coles SNT, but rather asserts that the State's entitlement to recovery as a beneficiary of funds expended on medical care prior to the 2005 settlement was modified by a state statute, N.J. Stat. § 30D:4D-7.1(b). That statute requires that in any recovery by a Medicaid beneficiary from a third party, by settlement or judgment, the intervening State agency must pay

_____

[4] Arguments made in briefing cannot amend the pleadings. Nevertheless, both Plaintiff and Defendants in briefing make reference to 42 U.S.C. § 1396p more generally as providing a potential cause of action. Section 1396p(a)(1) is known as the Medicaid Anti-lien Provision, similar in name to the "anti-Medicaid lien act" cause of action brought by Plaintiff. Even assuming, however, that Plaintiff had correctly invoked this statute in her Complaint, the Court agrees with Defendants that the provision only bars the levying by the state of Medicaid liens against the property or assets of a Medicaid participant *prior* to that participant's death. 42 U.S.C. 1396p(a)(1) ("No lien may be imposed against the property of any individual *prior to his death* on account of medical assistance paid or to be paid on his behalf under the State plan, except [under the enumerated circumstances]") (emphasis added). The facts alleged in the Complaint clearly indicate that Miss Coles was deceased at the time the State made its claim on the remaining assets of the SNT. Accordingly Plaintiff cannot state a claim based upon 42 U.S.C. § 1396p(a)(1).

its *pro rata* share of the attorney's fees incurred in securing the judgment in the form of a reduced reimbursement for Medicaid funds previously expended for the Medicaid beneficiary's medical care. *Ibid*. This state statute was enacted to codify the judgment of the New Jersey Supreme Court in *Hedgebeth v. Medford*, 74 N.J. 360, 368-69 (N.J. 1977) ("In this State a right of subrogation carries with it the equitable requirement of paying a *pro rata* share of counsel fees. . . . This rule is based on the equitable principle that a carrier should not be entitled to enjoy the fruits of the assured's judgment against a tortfeasor without contributing in any way to the costs or burdens of litigating that claim."). Once DMAHS elected to collect its share of the third party settlement, Plaintiff argues in briefing, its claim to additional funds expended on Stacy Coles' medical care prior to the date of the settlement, or Medicaid lien, was extinguished. Plaintiff therefore argues that Defendant's entitlement to recover from the SNT under 42 U.S.C. § 1396p(d)(4)(A) is limited to those expenses incurred by DMAHS after the settlement.

Considering only the allegations actually made in the Complaint, however, it is clear to the Court that Count II does not allege the first prong of a § 1983 analysis; Plaintiff has not alleged that she has been deprived of a right "secured by the Constitution or laws of the United States."  Looking first at the face of the Complaint, Count II claims a "deprivation of rights" created by, N.J. Stat. § 30:4D-7.1(b). [Complaint, Count II, ¶ 3]. First and foremost, this is a state statute. The proper standard for a § 1983 claim alleging that state officials have acted in violation of state law is whether the officials' actions so "shock the conscience" as to give rise to a violation of substantive due process. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 402 (3d Cir. 2003). In most cases, however, "a bad-faith violation of state law remains only a violation of state law." *Id.* In a recent, unreported decision, the Third Circuit clarified the standard it articulated in *United Artists*:

> Some violations of state law may 'shock the conscience.' . . .This, however, does not mean that every violation of state law is 'constitutionalized' through the application of the substantive due process clause. . . . On several occasions, this Court has implied that a violation of state law will constitute conscience shocking behavior when it contains "allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggest[ ] conscience-shocking behavior." *Chainey v. Street,* 523 F.3d 200, 220 (3d Cir. 2008); *see also Eichenlaub v. Township of Indiana,* 385 F.3d 274, 286 (3d Cir. 2004). In other words, a state official's failure to follow state law does not, by itself, shock the conscience in the absence of additional facts. No such additional facts are presented in this case; instead, the [plaintiffs] simply allege that the defendants did not follow state law in taking their property. While this certainly is not conduct without a remedy, the remedy is not provided by the Federal Constitution's substantive due process clause.

*Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 108-09 (3d Cir. 2011). Without further factual support, Plaintiff has alleged that "Defendant's [sic] conduct in this case is a malicious, intentional act to deprive Plaintiff of her property rights." [Complaint, Count II, ¶ 6]. While such a conclusory allegation might "shock the conscience" if coupled with additional factual allegations tending to show Defendants' malicious intent, no such additional facts are alleged, and, thus, a substantive due process claim is not pled. *Ashcroft*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations omitted); *In re Burlington*, 114 F.3d at 1429–30 (a court need not credit "bald assertions" in a complaint when deciding a motion to dismiss).

Next considering Defendant's characterization of Count II as a takings claim under the Constitution, this Court comes to the same conclusion. The money to which the State has laid claim, and to which Plaintiff asserts a competing claim is currently in the possession of the Stacy Coles Special Needs Trust. [Complaint, Count II, ¶ 5]. Because Miss Coles has died, the Trust is dissolving and its remaining assets will be distributed to the named beneficiaries. Both DMAHS and Plaintiff are named beneficiaries to the Trust, who, as agreed by all parties, are each entitled

to take some portion of the remaining trust corpus. How much each will take is disputed. As such, Plaintiff has not alleged that she has been deprived by the State of property in her possession without due process of law, instead, she has alleged that her claim in a disputed property currently in the possession of a third party, the SNT, is superior to that of another claimant, the State of New Jersey. [Complaint, Factual Statement, ¶ 19]. She bases the superiority of her claim on the action of a state statute. [Complaint, Count II, ¶ 3]. Accordingly Count II alleges neither a constitutionally protected property right, nor a federally defined claim to property in the possession of another.[5]

## VII. INJUNCTIVE RELIEF IN THE NATURE OF DECLARATORY JUDGMENT

In finding that Plaintiff has not pleaded deprivation of a right protected by the Constitution or laws of the United States in the Complaint's present manifestation, the Court does not conclude that Plaintiff is without remedy. Congress enacted the Declaratory Judgment Act to allow plaintiffs to secure a declaration of their rights where other remedies might be inappropriate. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). *See Balgowan v. State of N.J.*, 115 F.3d 214, 218 (3d Cir. 1997) ("Congress enacted the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, in order to provide a milder alternative to the injunction remedy.")

---

[5] Because neither Count I nor Count II states a claim for relief under § 1983, the Court declines to consider Defendant's arguments concerning the qualified immunity of Commissioner Velez and Director Harr.

(internal citations omitted). Application of the Declaratory Judgment Act is particularly appropriate in circumstances, like those in this matter, in which the parties agree that the determination of the right to a disputed piece of property will be decided by interpretation of a federal statute. Specifically, both Plaintiff and Defendants, in briefing, agree that the critical inquiry in this case is the meaning of the language in 42 U.S.C. § 1396p(d)(4)(A) entitling the State, as first remainder beneficiary of SNTs, to "all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan." Plaintiff claims that the amount of total medical assistance paid refers only to that portion of costs incurred by state Medicaid programs after the closing of the third party settlement creating the SNT. Defendant claims that the amount of total medical assistance paid refers to all monies expended both before and after the settlement — regardless of the state statute's *pro rata* deduction for attorney's fees and costs and of the closing of the third party settlement.

While the substantive counts of the Complaint do not state a claim for relief under § 1983, paragraph (a) of Plaintiff's prayer for relief is best interpreted as a claim for injunctive relief in the nature of a declaratory judgment. Plaintiff requests "[a]n order directing the defendants to accept $7,105.44 as full payment of the lien against Stacey [sic] Coles Estate and discharge any and all liens for medical care provided to the late Stacy Coles." [Complaint, p.7, ¶ (a)]. For the Court to grant such relief, it must adjudicate Plaintiff's and Defendants' respective legal entitlements to the remainder of the SNT. Such an adjudication rests on the interpretation of a federal statute, 42 U.S.C. § 1396p(d)(4)(A), and the interplay of the federal statute with the state enactment, N.J. Stat. § 30:4D-7.1(b). Because there is no cross-motion by Plaintiff for entry of judgment, this question is not now properly before the Court.

In the interest of clarifying the key matters in dispute that would be central to any declaratory judgment action, however, the Court observes, without deciding, two aspects of the Medicaid Act. First, the Court observes that the Medicaid Act does not contain a requirement that the State's recovery from the settlements of Medicaid beneficiaries and liable third parties be subject to a *pro rata* reduction for attorney's fees and costs.[6] *See, e.g.*, 42 U.S.C. § 1936k(b) (explaining that the state shall retain the amount of a third party recovery necessary to reimburse the amount of medical assistance provided). Second, the Court observes that while the Medicaid Act does not impose a *pro rata* reduction on State recovery, nor does it bar the states from imposing such a requirement upon themselves as part of their own Medicaid programs. *See Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 379 (3d Cir. 2011) (upholding Pennsylvania's third party settlement Medicaid reimbursement apportionment scheme, which includes a *pro rata* reduction for attorney's fees). Once a state has passed a *pro rata* reduction requirement, a question of law remains as to the status of any unreimbursed portion of the pre-settlement Medicaid lien. This question can only be answered through analysis of the interaction between

---

[6] In *Special Needs Trust for K.C.S. v. Folkemer*, 08:10-CV-1077-AW, 2011 WL 1231319 (D. Md. Mar. 28, 2011), the district court compared the federal statutory schemes of the two major healthcare entitlements: Medicaid and Medicare. Specifically, the district court opined:

> [T]his Court finds it particularly instructive that the Medicare statute does enact a pro rata reduction policy for Medicare reimbursements. 946 A.2d at 1241. ("Indeed, we find it telling that the federal government has chosen to enact a pro rata reduction policy for medi *care* reimbursements, but has not done the same for medi *caid.* See 42 C.F.R. § 411.37(a)(1) (2006) ('[m]edicare reduces its recovery to take account of the cost of procuring the judgment or settlement ... if-[i][p]rocurement costs are incurred because the claim is disputed; and [ii][t]hose costs are borne by the party against which [centers for medicare and medicaid services] seeks to recover.' ")). The enactment for a pro rata reduction for litigation costs in Medicare . . . demonstrates that had Congress intended to enact the same provision in the Medicaid statute, it would have expressly done so, as it did in the Medicare statute. As Congress has not yet spoken to this issue, the Court will not infer that Congress intended to require that the federal Medicaid statutes require the state's recovery to be prorated for attorney's fees.

*Ibid.*; *Accord State v. Peters*, 287 Conn. 82 (Conn. 2008).

the federal Medicaid Act and the state legislation and implementation of the Act. This is a question of law, not fact, but no party has moved for summary judgment on this legal question.

VIII. LEAVE TO AMEND

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." The Supreme Court has long instructed the lower courts that "this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, there is an existing fund and the parties dispute their respective entitlements to the monies contained therein. Taking the preceding observations into account, the remaining question of law which the facts of this case implicate, but which the allegations in the Complaint do not now bring before the Court, is how a *pro rata* share reduction requirement imposed by New Jersey state law modifies, if at all, the State's entitlement to recovery from the SNT under federal law, 42 U.S.C. § 1396p(d)(4)(A). This question is well suited to an action for declaratory judgment, and the Plaintiff shall be afforded an opportunity to make such a claim in an Amended Complaint, or may choose to pursue such a claim in the state courts.

CONCLUSION

For the foregoing reasons, this Court finds that Plaintiff's claims against DHS and DMAHS are barred by New Jersey's sovereign immunity under the Eleventh Amendment of the United States Constitution and that Plaintiff's claims against Commissioner Velez and Director

Harr are permitted under the doctrine of *Ex parte Young*, but that Plaintiff fails to allege a violation of federal law of the United States Constitution to serve as the predicate for a cause of action under 42 U.S.C. § 1983. Accordingly, Defendants' Motion to Dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) is granted with respect to Defendants DHS and DMAHS and denied with respect to Defendants Commissioner Velez and Director Harr. Defendants' Motion to Dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), is granted and the Complaint is hereby dismissed without prejudice. Plaintiff is granted leave to file an Amended Complaint, consistent with this Opinion, within the time provided in the Order to follow.[7]

  Order to follow.

Dated: ____5/28/2014_____        _____/s/ Freda L. Wolfson_____
                 The Honorable Freda L. Wolfson
                 United States District Judge

---

[7] If Plaintiff should file an Amended Complaint in this case, then either Plaintiff or Defendants may move for judgment on the underlying legal issue of statutory interpretation and legal entitlement to SNT assets.